DECISION AND JUDGMENT ENTRY
{¶ 1} Earl and Robert Roll ("Earl" and "Robert") appeal the will contest judgment, rendered after a jury verdict in the Ross County Common Pleas Court, Probate Division, which found the instrument dated April 22, 2002 as the Last Will and Testament of Judith Ferne Roll ("Judith"). Earl and Robert first assert that the trial court erred when it refused to give their proposed jury instruction for testamentary capacity. Because the trial court's instruction fairly and correctly stated the applicable law, we disagree. Earl and Robert next assert that the trial court erred when it admitted and excluded certain evidence. Because the trial court has broad discretion when it admits or excludes evidence and because we find that the trial court did not abuse its discretion regarding assignments of error two, three, four and five, we disagree. However, because there was a clear and prejudical abuse of discretion as to the seventh assignment of error, we agree. Finally, Earl and Robert assert that the trial court erred when it realigned Robert from a party plaintiff to a party defendant. Because we find that Robert is a necessary party under R.C. 2107.73(A) but not an interested person under R.C.2107.71(A) whom can initiate a will contest action, we disagree. Accordingly, we affirm in part, reverse in part, and remand this cause to the trial court for further proceedings consistent with this opinion.
 I. {¶ 2} Earl married Judith in 1947. They had two children, Robert W. Roll and Stephanie A. Edwards ("Stephanie"). Robert fathered Angela Roll-Congrove ("Angela") and Carrie Stauffer ("Carrie"). Stephanie is without issue.
 {¶ 3} Earl and Judith accumulated more than three hundred acres of farmland over the years. Earl and Robert farmed these acres. When Earl retired, Robert took over all the farming. Judith was a homemaker. Stephanie taught school until she retired.
 {¶ 4} On April 8, 1987, Judith and Earl executed mutual wills, wherein Judith left her entire estate to Earl. Judith executed a second will on March 18, 1998 and a third will on March 14, 2000. In her third will, Judith made a specific bequest of valuable antiques and collectibles, along with $50,000, to Stephanie with the residue going to Earl. The same attorney prepared each of the first three wills. On April 22, 2002, Judith executed a fourth will prepared by a different attorney. In this fourth will, Judith bequeathed a number of valuable heirlooms to Stephanie, and the remainder of her estate in equal shares to Stephanie and Robert. Further, Judith disinherited her surviving spouse, Earl, without a specific disinheritance clause.
 {¶ 5} After a long battle with cancer, Judith died on July 9, 2002. On July 22, 2002, the trial court admitted Judith's 2002 will to probate. Earl and Robert timely filed a complaint containing a will contest action and a second action, namely an intentional interference with expectation of inheritance action. The trial court found that it did not have jurisdiction to hear the second action. On appeal, we affirmed. See Roll v. Edwards,156 Ohio App.3d 227, 2004-Ohio-767, not accepted for review102 Ohio St.3d 1531, 2004-Ohio-3580.
 {¶ 6} In their will contest action, Earl and Robert allege that Judith was incompetent and subject to undue influence at the time she executed the 2002 will. Accordingly, they requested that the probate court: (1) find the 2002 will invalid and (2) vacate the order admitting it to probate.
 {¶ 7} Before trial, Stephanie filed a motion to dismiss Robert as a party plaintiff because he was not an interested party that could initiate a will contest action as required by R.C. 2107.71(A). The trial court agreed, but found that Robert was a necessary party pursuant to R.C. 2107.73(A). Therefore, the court ordered that Robert would proceed as a party defendant and not as a party plaintiff.
 {¶ 8} At trial, Earl's counsel asked Dr. Gabis (who attended Judith for a broken arm on March 30, 2002), "What affect in your opinion through a [reasonable degree of] medical certainty would the drugs that [Judith] was taking[,] how would they affect one physically?" Without objection, Dr. Gabis answered that two types of the drugs are central nervous system depressants that "can make you sleepy, tired, they can affect your ability to concentrate."
 {¶ 9} Later, Earl's counsel asked Dr. Gabis a hypothetical question. The trial court sustained an objection. Earl's counsel, in question and answer form (out of the presence of the jury), proffered the questions and answers. He asked Dr. Gabis to assume certain facts followed by the question, "Can you form an opinion as to [a] reasonable [degree of] medical certainty as to whether or not it was probable Judith Ferne Roll suffered from extreme fatigue on [April 22, 2002]?" The trial court again sustained the objection. The remaining proffer involved an assumption that Dr. Gabis had viewed an April 22, 2002 videotape involving the execution of the will. However, on two different occasions, Dr. Gabis indicated that he had not viewed the videotape.
 {¶ 10} Dana Borror testified that she visited Judith shortly after Judith received injuries from a fall, and again after Judith recovered enough to travel. Earl's counsel asked Dana if she saw any change in Judith's physical and mental condition from the time of the fall to the time she saw Judith again. The trial court sustained an objection. Earl's counsel asked Dana if she was aware of any decrease in Judith's mental condition in 2002. Again, the trial court sustained an objection. Counsel did not proffer Dana's testimony.
 {¶ 11} Earl's counsel, while cross-examining Stephanie, wanted to ask Stephanie about her actions as executor for: (1) "including Robert's farm equipment in the inventory and fully contesting it"; (2) "valuing the farm at the highest and best use"; (3) "refusing to elect farm use evaluation"; and (4) "refusing to sell some acreage to Earl who would generate enough to pay debts and taxes and instead filing a complaint to sell all the real estate." The trial court sustained an objection.
 {¶ 12} Attorney Melody Steely testified that she prepared three prior wills for Judith. She said that Judith asked her to come to the nursing home to prepare the April 2002 will. She testified that she refused "[b]ecause she couldn't tell me what she really wanted to do[,] she wavered, she was unsure, she was upset, she was sick, she was asking me what she should do with her assets."
 {¶ 13} Later, Earl's counsel asked Attorney Steely her opinion regarding Judith's mental capacity on April 22, 2002 based on Attorney Steely's observations after viewing the April 22, 2002 videotape. The trial court sustained an objection. Counsel did not proffer Attorney Steely's testimony.
 {¶ 14} The magistrate of the probate court where the will contest action was filed and heard by the jury in February 2005 testified that he was the attorney who prepared the April 22, 2002 will. He said that he prepared the will while he was in private practice working for another attorney. Stephanie's attorney asked him his current occupation. Over an objection, the trial court allowed his own magistrate to answer the question.
 {¶ 15} During jury instructions, the trial court did not include additional language that Earl and Robert's attorney proposed on the issue of testamentary capacity. They wanted the following language included in the testamentary capacity charge to the jury: "It is essential to the validity of a will that the testator know and understand its actual contents. [Cite omitted.] It is self-evident that when a testator is ignorant of the contents of the will, it cannot be said to express his mind. [Cite omitted.]"
 {¶ 16} The jury found Judith's 2002 will valid. Earl and Robert appeal the judgment and raise the following seven assignments of error: "1. DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT REFUSED TO GIVE PLAINTIFF'S REQUESTED JURY INSTRUCTION? 2. DID THE TRIAL COURT COMMIT PREJUDICAL ERROR WHEN IT LIMITED OR REFUSED TO ADMIT PLAINTIFF'S EXPERT TESTIMONY? 3. DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT REFUSED TO ADMIT PLAINTIFF'S LAY TESTIMONY AS TO MENTAL CONDITION? 4. DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT LIMITED OR REFUSED TO ALLOW PLAINTIFF'S CROSS EXAMINATION OF EXECUTOR? 5. DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT LIMITED THE DIRECT EXAMINATION OF ATTORNEY MELODY STEELY? 6. DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR IN ITS ALIGNMENT OF PARTIES? 7. DID THE TRIAL COURT COMM[IT] PREJUDICIAL ERROR WHEN IT DENIED PLAINTIFF'S MOTION IN LIMINE AS TO ATTORNEY DROTLEFF?"
 II. {¶ 17} In their first assignment of error, Earl and Robert assert that the trial court erred by not giving their proposed jury instruction. The trial court instructed the jury on the law of testamentary capacity, i.e. the conditions the testator must understand in order to be found of sound mind and memory at the time a will is made. Earl and Robert's proposed instruction included all the law of the trial court's instruction on testamentary capacity plus it added the following language: "It is essential to the validity of a will that the testator know and understand its actual contents. [Cite omitted.] It is self-evident that when a testator is ignorant of the contents of the will, it cannot be said to express his mind. [Cite omitted.]" They maintain that the trial court should have given this added language because it is a correct statement of the law. They did not object on the record to the trial court's jury instructions.
 {¶ 18} Civ.R. 51(A) provides that a party may not assign as error on appeal the failure of a trial court to give a jury instruction unless the party objects before the jury retires and specifically states the matter objected to and the grounds of the objection. See, e.g., Leber v. Smith (1994), 70 Ohio St.3d 548,552. However, the trial court should give the jury complete instructions on the applicable law raised by the evidence. Civ.R. 51(A); Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585,591. Therefore, a party does not waive his or her right to appeal a jury instruction when the complaining party has fully apprised the court of the correct law on a material issue and unsuccessfully requested the inclusion of that correct law in the trial court's charge to the jury. Krischbaum v. Dillon (1991),58 Ohio St.3d 58, 61. Whether the court included the correct law in the jury instructions is a question of law which we review de novo. Murphy v. Carrollton Mfg. Co., supra.
 {¶ 19} Here, Earl and Robert did not object on the record to the trial court's jury instructions as required by Civ.R. 51(A). However, they have not waived any error because, pursuant toKrischbaum, they maintain that their proposed jury instruction apprised the court of the correct statement of the law on testamentary capacity and requested its inclusion, albeit unsuccessfully.
 {¶ 20} In determining the appropriateness of jury instructions, an appellate court reviews the instructions as a whole. Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 410. If the instructions fairly and correctly state the applicable law, reversible error will not be found. Id.
 {¶ 21} "[T]he Supreme Court of Ohio found testamentary capacity to exist when a testator has sufficient mind and memory to understand the nature of the business she's engaged in, the general nature and extent of her property, the names and identities of those who have a natural claim upon her bounty, and the relationship she has to the members of her family." Wise v.Riddlebaugh (May 29, 1997), Marion App. No. 9-97-6, citingNiemes v. Niemes (1917), 97 Ohio St. 145, syllabus.
 {¶ 22} Here, the trial court gave the standard Ohio Jury Instruction regarding testamentary capacity. It instructed the jury that "the law does require that the testatrix understands that she is making a will to dispose of her property at death. The testatrix must also understand generally the nature and extent of her property. And finally the testatrix has in her mind the names and identity of those persons who are her relatives, next of kin, or the natural objects of her bounty and understands her relationship to them." This instruction included all the elements of testamentary capacity as outlined in Niemes.
Therefore, the trial court's instruction was a fair and correct statement of the law. Consequently, pursuant to Wozniak, the court did not err by refusing to give the requested instruction.
 {¶ 23} According, we overrule Earl and Robert's first assignment of error.
 III. {¶ 24} In assignments of error two, three, four, five and seven, Earl and Robert assert that the trial court committed prejudicial error when it admitted or excluded certain testimony. Thus, we will address these assignments of error as a group.
 {¶ 25} A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, we will not reversed its judgment absent a clear showing of an abuse of discretion with attendant material prejudice to defendant.Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271; State v.Hymore (1967), 9 Ohio St.2d 122, certiorari denied (1968),390 U.S. 1024. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 A. {¶ 26} Earl and Robert assert in their second assignment of error that the trial court committed prejudicial error when it sustained objections to a hypothetical question posed to an expert witness. We disagree.
 {¶ 27} Evid.R. 702 in part provides: "A witness may testify as an expert if all of the following apply: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; [and] (C) The witness' testimony is based on reliable scientific, technical, or other specialized information."
 {¶ 28} Evid.R. 703 provides, "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Evid.R. 705 states, "The expert may testify in terms of opinion or inference and give his reasons therefore after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."
 {¶ 29} Here, Earl's counsel asked Dr. Gabis (who attended Judith for a broken arm on March 30, 2002) to assume certain facts, followed by the question, "Can you form an opinion as to [a] reasonable [degree of] medical certainty as to whether or not it was probable Judith Ferne Roll suffered from extreme fatigue on four, twenty-two, O two?" The trial court sustained an objection.
 {¶ 30} We find that the trial court did not commit prejudicial error in sustaining the objection to that question. Earlier, Earl's counsel asked Dr. Gabis, "What affect in your opinion through a [reasonable degree of] medical certainty would the drugs that [Judith] was taking[,] how would they affect one physically?" Dr. Gabis answered that two types of the drugs are central nervous system depressants that "can make you sleepy, tired, they can affect your ability to concentrate." Therefore, the jurors were already aware that Judith was taking drugs that made her sleepy and tired before counsel asked the hypothetical question about extreme fatigue. Consequently, if the trial court committed error in sustaining the objection to the question, such error was harmless and not prejudical.
 {¶ 31} Earl's counsel asked other hypothetical questions based on the same assumed facts. However, the remaining questions all involved the assumption that Dr. Gabis had viewed the April 22, 2002 videotape. Despite Dr. Gabis telling counsel twice that he had not viewed the videotape, counsel continued to ask the questions based on Dr. Gabis having viewed the videotape. Therefore, the trial court did not commit prejudicial error when it sustained each of the objections to the remaining hypothetical questions involving the videotape. Consequently, the trial court did not abuse its discretion in limiting the testimony of Dr. Gabis.
 {¶ 32} Accordingly, we overrule Earl and Robert's second assignment of error.
 B. {¶ 33} In their third and fifth assignments of error, Earl and Robert assert that the trial court committed prejudicial error when it excluded the testimony of: (1) a lay witness regarding Judith's mental condition and (2) an attorney as a lay or expert witness regarding Judith's mental capacity on April 22, 2002 based on the attorney's observations after viewing the videotaped execution of the will.
 {¶ 34} Evid.R. 701 provides when a lay witness may offer opinion testimony, and Evid.R. 702 provides when an expert witness may offer opinion testimony. However, we note that Earl and Robert failed to make an explicit proffer of the opinion testimony of these two witnesses. Evid.R. 103(A)(2) provides that in order to preserve error for appeal, a proffer of the evidence that was excluded must be made on the record. Further, we cannot tell from reviewing the record what their testimony might be. The lay witness, Dana Borror, testified that she saw Judith immediately after her fall and some time thereafter. However, Earl and Robert did not proffer what opinion Borror may have formed about Judith's mental state during these visits.
 {¶ 35} In regards to Attorney Steely, she testified that she prepared prior wills for Judith but refused to go to the nursing home to do prepare the April 2002 will. She further testified that she refused to go "[b]ecause she couldn't tell me what she really wanted to do[,] she wavered, she was unsure, she was upset, she was sick, she was asking me what she should do with her assets." Again, Earl and Robert did not proffer their expectation of how Steeley would testify if permitted to offer her opinion on Judith's mental capacity.
 {¶ 36} Because we cannot tell how each witness would have responded to the questions, we have nothing to review. Accordingly, we overrule Earl and Robert's third and fifth assignments of error.
 C. {¶ 37} In their fourth assignment of error, Earl and Robert assert that the trial court erred when it limited their cross-examination of Stephanie, the executrix of the estate. They contend that they had a right to cross-examine her for the purpose of showing her bias against them by showing that she made financial decisions as the executrix that favored her and disfavored them.
 {¶ 38} Evid.R. 611(B) provides that "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility." "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. However, even relevant evidence that goes to matters affecting credibility may be excluded under Evid.R. 403(A), which provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." See, generally, Oberlin v. Akron Gen. Med. Ctr.,91 Ohio St.3d 169, 171, 2001-Ohio-248. Matters affecting credibility may include "[b]ias, prejudice, interest, or any motive to misrepresent[.]" Evid.R. 616(A).
 {¶ 39} Here, we find that the trial court did not abuse its discretion when it limited the cross-examination of Stephanie. The trial court, throughout the trial, generally considered evidence irrelevant when it involved matters that occurred after the will's execution. The evidence in question (financial decisions regarding the administration of the estate) involved matters that occurred after the will's execution. While the record does not show for what purpose this evidence was offered, Earl and Robert now say that it was for the purpose of showing bias. However, they did not state on the record the purpose of bias at a time when the trial court could have considered it. Consequently, the trial court never made a decision involving the purpose of bias. Thus, we have no decision of the trial court to review, and Earl and Robert have waived this issue.
 {¶ 40} In addition, even if we assume that the trial court considered the purpose of bias and found it relevant, we still find that the trial court did not abuse its discretion in excluding this evidence. Adding another issue for the jury to consider, i.e. whether Stephanie made good or bad financial decisions regarding the estate that favored her, could confuse or mislead the jury. Moreover, even if we assume that the trial court erred, we find this error harmless. Stephanie openly admitted that she had had fights over the years with her father Earl and her brother Robert. Thus, the jury was well aware of her possible bias.
 {¶ 41} Accordingly, we overrule Earl and Robert's fourth assignment of error.
 D. {¶ 42} In their seventh assignment of error, Earl and Robert assert that the trial court committed prejudicial error when it allowed the attorney who prepared the April 22, 2002 will to testify that he worked as a magistrate in the probate/juvenile court of Ross County. They maintain that the attorney had little experience when he prepared the will and that his "magistrate" testimony unfairly enhanced his credentials, especially when considering that the judge handling this case, who ultimately decided the admissibility of the testimony, is currently the attorney's boss. Stephanie counters that the jurors were already aware that the attorney was a magistrate because both sides explored this issue in voir dire to see if any of the jurors may have dealt with him in his official capacity.
 {¶ 43} Stephanie contends that on January 20, 2005, at the last pre-trial, the trial judge asked counsel if he should recuse himself, because he would be ruling on whether his employee's (Attorney Drotleff's) testimony was admissible. She asserts that opposing counsel said that no request for recusal was forthcoming. Stephanie did not provide us with a record of this hearing, and the entry regarding the hearing is silent on this issue. Earl and Robert's counsel did not file a reply brief with this court denying this assertion. Thus, for purposes of this opinion, we will assume that she is correct. Hence, we will not consider this part of Earl and Robert's seventh assignment of error because of the invited error doctrine, i.e. "[a] party will not be permitted to take advantage of an error which he himself invited or induced." Hal Artz Lincoln-Mercury, Inc. v. FordMotor Co. (1986), 28 Ohio St.3d 20, paragraph one of the syllabus. In addition, Stephanie maintains that jurors were already aware that Attorney Drotleff was a magistrate in the probate/juvenile court because both sides explored this issue in voir dire to see if any of the jurors may have dealt with him in his official capacity. Again, Stephanie did not provide us with a record of the voir dire proceedings. However, for purposes of this opinion, we will assume such questioning of the jurors occurred, and we will consider this part of her counter-argument.
 {¶ 44} Evid.R. 401 provides that "`[r]elevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 403(A) provides that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 45} Here, Earl's counsel asked questions of attorney Drotleff, the attorney who prepared the 2002 will, for the purpose of establishing that: (1) he was inexperienced when the 2002 will was executed; and (2) he did not have all the answers involving the law as it relates to estate planning and wills. To counter this evidence, Stephanie's counsel asked questions of Attorney Drotleff for the purpose of explaining why he does not currently know all the answers relating to estate planning and wills. The following exchange of questions and answers occurred:
[Stephanie's Attorney to Attorney Drotleff]
Q. Mr. Drotleff you are no longer employed at the firm of Nusbaum, Ater and Wissler are you?
A. That's correct I am not.
Q. When did you leave that position?
A. November of. . . . .
[Earl's Attorney]
Objection. We have [a prior motion] in limine[;] I was raising the same issue[, i.e. we asked that information about Attorney Drotleff's current position with this court not be allowed into evidence because this information is highly prejudicial.]
[Trial Judge]
Overruled.
[Stephanie's Attorney to Attorney Drotleff]
Q. And what's your answer?
A. November, Two thousand two.
Q. And where are you now employed Mr. Drotleff?
A. I work for the County in the capacity as a Magistrate of Juvenile/Probate Division, Common Pleas Court.
Q. You are not now a private attorney doing work . . .
A. . . . Correct . . .
Q, . . . for individuals?
A. Correct.
Q. And you have done no private work since you left the office of Mr. Nusbaum?
A. Correct.
Q. And would it be fair to say that you have done no estate planning or Wills also since that date?
A. Correct.
Q. You've no reason to refresh your memory on the rules and laws on estate planning in the year two thousand two?
A. That's correct.
We find that the above evidence is relevant to show why Attorney Drotleff is not now current on the rules and laws of estate planning and wills. However, not all relevant evidence is admissible.
 {¶ 46} Evid.R. 403(A) requires mandatory exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Application of Evid.R. 403(A) requires a three-step process: First, the probative value of the evidence at issue must be determined. "Remoteness" is one factor to consider when determining probative value. Second, the amount of unfair prejudice to a party must be ascertained. Finally, it must be determined whether the unfair prejudice to the party substantially outweighs the probative value of the evidence. See 1 Giannelli Snyder, Evidence (2d Ed. 2001) 187, Section 403.01.
 {¶ 47} Evid.R. 403 manifests a definite bias in favor of admissibility. "[R]elevant evidence, challenged as being outweighed by its prejudicial effects, should be viewed in a light most favorable to the proponent of the evidence, maximizing its probative value and minimizing any prejudicial effect to one opposing admission." 1 Giannelli Snyder, Evidence (2d Ed. 2001) 198, Section 403.9, quoting State v. Maurer (1984),15 Ohio St.3d 239, 265. A limiting jury instruction, alternative means of proof, and requesting the parties to enter into a stipulation are practical factors that a trial court could consider to minimize the prejudicial effect of relevant evidence. Id. at 199-201.
 {¶ 48} Here, the evidence of Attorney Drotleff's position as a magistrate in the same court where the action was tried, has little probative value. To minimize the prejudicial effect of that information, during voir dire, the trial court could have asked the potential jurors if they knew Attorney Drotleff. Then, if some of them knew him, they could have been separated from the other jurors for additional inquiry, e.g. "How do you know him?" During trial, Stephanie's attorney could have established his purpose for introducing the evidence by simply showing that Attorney Drotleff is no longer in private practice and has not been involved in estate planning and drafting wills for over two years. Even though the February 2005 trial was remote in time from the April, 2002 will execution, the "remoteness" factor has little bearing on the probative value here because Stephanie's attorney was trying to show that Attorney Drotleff had not been in private practice for awhile.
 {¶ 49} On the other hand, the unfair prejudice to the other side is substantial. The jurors could have inferred that Attorney Drotleff must know what he is doing when it comes to wills because he is a magistrate in the same court where he testified. After all, the probate court decides when a will is admitted to probate. Hence, the evidence at issue could have enhanced Attorney Drotleff's credentials in the eyes of the jurors. Thus, the jurors could have assigned more weight to his testimony based upon their knowledge of his current employment. Attorney Drotleff's testimony was critical because he had conversations with Judith before the April 22, 2002 video that could offer significant insight into her mental capacity at the time she executed the will. The jury could have decided that the video did not establish the requirements for testamentary capacity but that Attorney Drotleff's other encounters with Judith did establish the requirements. In addition, the trial court did not give the jury a limiting instruction.
 {¶ 50} Consequently, we find that the unfair prejudice to Earl and Robert substantially outweighs the probative value of the evidence. Therefore, we find that "there has been a clear and prejudicial abuse of discretion." See 1 Giannelli Snyder, Evidence (2d Ed. 2001) 201, Section 403.10, quoting O'Brien v.Angley (1980), 63 Ohio St.2d 159, 163.
 {¶ 51} Accordingly, we sustain Earl and Robert's seventh assignment of error.
 E. {¶ 52} In short, we overrule all of the assignments of error involving the admission or exclusion of evidence except the seventh assignment of error. We find that "there has been a clear and prejudical abuse of discretion" in regard to the seventh assignment of error.
 IV. {¶ 53} Finally, in their sixth assignment of error, Earl and Robert assert that the trial court committed prejudicial error when it changed Robert from a party plaintiff to a party defendant. (The parties do not dispute that Robert is a necessary party. See R.C. 2107.73.) This analysis involves a question of law that we will review de novo.
 {¶ 54} The Civil Rules apply to will contest actions except as otherwise provided in R.C. 2107.71 to 2107.75. R.C. 2107.72. See Siebenthal v. Summers (1978), 56 Ohio App.2d 168. The pertinent part of R.C. 2107.71(A) provides, "A person interested in a will * * * may contest its validity[.]" "A person interested in a will * * * is one, who, at the time of the commencement of an action to contest a will, has a direct, pecuniary interest in the estate of the putative testator, that would be impaired or defeated if the instrument admitted to probate is a valid will."Steinberg v. Central Trust (1969), 18 Ohio St.2d 33, paragraph one of the syllabus.
 {¶ 55} Here, the Civil Rules do not apply when we must determine who may initiate a will contest action because R.C.2107.71(A) mandates that only a person interested in a will may initiate the action. Robert inherits nothing if the will is found invalid because he is not an heir who would inherit intestate, see R.C. 2105.06(B), and he does not inherit under Judith's third will. He only inherits if the April 22, 2002 will is found valid. Therefore, Robert does not qualify as a person interested in a will under R.C. 2107.71(A) and cannot bring the will contest action. Consequently, the trial court did not err when it aligned Robert as a party defendant.
 {¶ 56} Accordingly, we overrule Earl and Robert's sixth assignment of error.
 V. {¶ 57} In conclusion, we find that the trial court did not err when it refused to give Earl and Robert's proposed jury instruction regarding Judith's testamentary capacity because the trial court's instruction fairly and correctly stated the applicable law. (See the First Assignment of Error.) We further find that the trial court did not abuse its discretion when it admitted and excluded evidence except as to the seventh assignment of error. (See the Second, Third, Fourth, Fifth and Seventh Assignments of Error.) Finally, we find that the trial court did not err when it realigned Robert from a party plaintiff to a party defendant because Robert is a necessary party under R.C. 2107.73(A) but not an interested person under R.C.2107.71(A) that can initiate a will contest action. (See the Sixth Assignment of Error.) Therefore, we overrule the first six assignments of error and sustain the seventh assignment of error. We affirm in part, reverse in part, and remand this cause to the trial court for further proceedings consistent with this opinion.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSEREMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED to the trial court for further proceedings consistent with this opinion. Appellants shall recover from appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas, Probate Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, P.J. and Abele, J.: Concurs in Judgment and Opinion as to Assignments of Error 1-6. Concurs in Judgment Only as to Assignment of Error 7.